**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**EASTERN DIVISION**

**LARRY W. CEASE**                                                                    **PLAINTIFF**

**V.**                          **CASE NO.: 2:09CV00181 BD**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration**                                          **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Larry W. Cease has appealed the final decision of the Commissioner of

the Social Security Administration (the "Commissioner") denying his claim for Disability

Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").  For

reasons explained below, Plaintiff's appeal of the Commissioner's decision is dismissed

with prejudice.

**I.     Background:**

On May 28, 2004, Plaintiff filed for DIB benefits due to Post Traumatic Stress

Disorder ("PTSD"); and neck, back, and shoulder pain.  (Tr. 66, 70, 103, 106, 115, 131,

134)  Plaintiff claimed an onset date of May 18, 2004.  (Tr. 66)  He was eligible for

benefits through December 31, 2008.  (Tr. 66)

Plaintiff's claim was denied initially and upon reconsideration.  (Tr. 40, 42)  At

Plaintiff's request, an Administrative Law Judge ("ALJ")[1] held a hearing on July 10,

_____

[1]  The Honorable David J. Manley.

1

2007, at which the Plaintiff appeared with his attorney.  (Tr. 470)   At the hearing, the

ALJ heard testimony from the Plaintiff and a vocational expert ("VE").  (Tr. 489-494)

The ALJ issued a decision on September 20, 2007, denying Plaintiff benefits.  (Tr.

17-25)  Plaintiff appealed the ALJ's decision, but the Appeals Council denied Plaintiff's

request for review on October 23, 2009.  (Tr. 4-6)  The ALJ's decision is the final

decision of the Commissioner that is being appealed here.

Plaintiff was fifty-five years old at the time of his hearing.  (Tr. 476)  He had

passed the General Educational Development test and had past relevant work as a

millwright.  (Tr. 476)  At the time of the hearing, Plaintiff was living with his ex-wife.

(Tr. 482)

## II.   <u>ALJ's Decision</u>:

The ALJ followed the required five-step sequence to determine: (1) whether the

claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a

severe impairment; (3) if so, whether the impairment (or combination of impairments)

met or equaled an impairment listed in the Listing of Impairments in Appendix 1, Subpart

P, 20 C.F.R. Part 404; (4) if not, whether the impairment (or combination of impairments)

prevented the claimant from performing past relevant work; and (5) if so, whether the

impairment (or combination of impairments) prevented the claimant from performing any

other jobs available in significant numbers in the national economy.  20 C.F.R. §

404.1520(a)-(g) (2005).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Tr. 19)  He found that Plaintiff had the following severe impairments: traumatic injuries to his left shoulder and residual impairments from repair; degenerative disk disease and degenerative joint disease of both the cervical and lumbosacral spine; depression; anxiety; and pain in his left shoulder, neck, and lower back.  (Tr. 19)  The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a Listing.  (Tr. 19)  The ALJ determined that Plaintiff had the residual functional capacity to perform a narrowed range of medium work.  (Tr. 20)  He further found, based on the testimony of the VE, that Plaintiff could not perform his past relevant work as a millwright, but that he had acquired work skills in his past work that were transferable to other occupations.  (Tr. 23-25)  The ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy.  (Tr. 23-25)

## III.   Analysis:

### A.   *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision.  *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009), and 42 U.S.C. § 405(g).  "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion."  *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).

3

In reviewing the record as a whole, the Court "must consider the evidence which detracts from the Commissioner's decision, as well as the evidence in support of the decision," but the decision cannot be reversed, "simply because some evidence supports a conclusion other than that of the Commissioner." *Pelkey v. Barhart*, 433 F.3d 575, 578 (8th Cir. 2006).

Plaintiff claims the findings of the ALJ are not supported by substantial evidence because: (1) the Plaintiff had a listed impairment; (2) the ALJ erred by not properly considering Plaintiff's non-exertional impairments when concluding Plaintiff had the residual functional capacity to perform a narrow ed range of medium work; and (3) the ALJ did not properly apply the *Polaski* factors in determining Plaintiff's credibility.

B.    *Listed Impairment*

The Listing of Impairments in Appendix 1, Subpart P, 20 C.F.R. Part 404 ("a Listing") describes impairments for each of the major body systems that the Social Security Administration considers severe enough to prevent an individual from doing any gainful activity  –  regardless of age, education, or work experience.  20 C.F.R. § 404.1525(a).  In order for a plaintiff to establish that his impairment matches a Listing, he "must meet all of the specified medical criteria" for that Listing.  *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885 (1990).  A plaintiff has the burden of showing that he meets a Listing during the relevant period., *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)(citing *Sullivan*, 493 U.S. at 530-31); and, a diagnosis alone does not

4

establish that a Listing has been met.  *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir.

2004); 20 C.F.R. §§ 404.1525(d); 416.925(d).

Here, the ALJ found that Plaintiff's impairments neither met nor were medically

equal to the requirements of the Listing of Impairments as described in 20 C.F.R. § 404,

Subpart P, Appendix 1.  In his brief, Plaintiff claims the ALJ erred in finding his

impairments did not meet Listings 12.04, 12.06, and 12.08.[2]  (#12 at pp. 15-17)

      1.      Listing 12.04

Plaintiff argues the ALJ erred by not finding his mental impairments met Listing

12.04 for "[a]ffective [d]isorders."  In order to meet Listing 12.04, a plaintiff must meet

the requirements in both paragraphs A and B, or in paragraph C.

Here, Plaintiff does not specifically state how he met the criteria of any paragraph

of Listing 12.04.  Instead, Plaintiff provides the definition of affective disorders and

generally discusses his activities of daily living; social functioning; concentration,

persistence and pace; and episodes of decompensation.  (#9 at pp. 9-15)

Even assuming Plaintiff could meet the paragraph A criteria of Listing 12.04, to

satisfy the paragraph B criteria of the Listing Plaintiff would have to show at least two of

the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties

in maintaining social functioning; or 3. Marked difficulties in maintaining concentration,

persistence, or pace; or 4. Repeated episodes of decompensation, each of extended

---

      [2]Plaintiff does not challenge the ALJ's conclusion that he did not meet Listing 1.02 for
Major Dysfunction of a Joint, or Listing 1.04 for Disorders of the spine.

duration." See 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.04(B). "Marked," in this context, means that several activities or functions are impaired, or that one is impaired to such a degree that it seriously interferes with the ability to function independently, appropriately, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C).

There was no error in the ALJ's finding that Plaintiff did not have marked restriction in two of the paragraph B categories. As the ALJ points out, the State agency medical consultant completed a Psychiatric Review Technique Form indicating Plaintiff did not have marked restriction with respect to his daily activities, social functioning, or ability to maintain concentration, persistence, or pace. (Tr. 20, 245-57) The consultants also found insufficient evidence of any episodes of decompensation. (Tr. 20, 255).

Additional evidence supports the ALJ's conclusion that Plaintiff did not have marked restriction in his activities in daily living. Plaintiff reported that he had no problems with his personal care, was able to shop for groceries, prepare meals, drive a car, and perform household chores. (Tr. 98-105, 126-33) As the ALJ noted, Plaintiff was also able to take care of his German Shepherd dog. (Tr. 22, 483-84)

There is also substantial evidence to support the ALJ's conclusion that Plaintiff did not have marked limitations with respect to maintaining social functioning. Social functioning refers to a claimant's capacity to interact independently, appropriately, and effectively on a sustained basis with others. 20 C.F.R. Pt. 404, Subpt. P, App. 1,

§ 12.00(B)(4).  The ALJ noted that the State agency consultant found that Plaintiff had

moderate difficulties in maintaining social functioning.  (Tr. 20, 255)  He also noted,

however, that Plaintiff's symptoms improved with medication; and, in the past, Plaintiff

had been able to work while on Zoloft.  (Tr. 19-20, 478-79)  During an April 11, 2007

mental status evaluation, Charles M. Spellmann, Ph.D., noted that Plaintiff's "day-to-day

adaptive functioning does not seem significantly impaired as measured by his ability to

hold jobs without being fired.  Most recently he was able to reconcile with his wife."  (Tr.

234)

There is also substantial support for the ALJ's conclusion that Plaintiff did not

have marked limitation with respect to maintaining concentration, persistence, or pace.

Dr. Spellmann noted that Plaintiff's concentration "appeared adequate," his persistence

was "variable," and his pace was "satisfactory."  (Tr. 234)

The ALJ's conclusion that Plaintiff had not experienced repeated episodes of

decompensation is also supported by substantial evidence.  Episodes of decompensation

are exacerbations or temporary increases in symptoms and signs accompanied by loss of

adaptive functioning, as manifested by difficulty in performing activities of daily living,

maintaining social relationships, or maintaining concentration, persistence, or pace.  20

C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).  The term "repeated episodes of

decompensation, each of extending duration," means three episodes within one year, or an

average of one episode every four months, each lasting for at least two weeks.  *Id*.  The

Court has reviewed the record and has found no evidence of episodes of decompensation that were of extended duration during the relevant time period.

To satisfy the paragraph C criteria of Listing 12.04, Plaintiff must show:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C).

As set out above, Plaintiff did not meet his burden of establishing a medically documented history of a chronic affective disorder as described in paragraph C of Listing 12.04.  But even if Plaintiff had met this burden, the ALJ's finding that Plaintiff had not experienced repeated episodes of decompensation is supported by substantial evidence. Additionally, Plaintiff's daily activities show that he was able to function outside of his home during the relevant time period.  (Tr. 98-105, 126-33)

There is substantial evidence in the record to support the ALJ's conclusion that Plaintiff did not satisfy paragraph C of Listing 12.04, and to support the conclusion that Plaintiff did not meet Listing 12.04.

8

2.      Listing 12.06

In order to meet Listing 12.06, a claimant must show a medically documented anxiety-related disorder.  Additionally, a plaintiff must meet either paragraph B or paragraph C of the Listing.

Like paragraph B for Listing 12.04, paragraph B of Listing 12.06 requires that a plaintiff's disorder result in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration."  See 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.06(B).  As discussed above, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff did not meet the criteria set out in paragraph B of 12.06.

Paragraph C of Listing 12.06 requires a claimant to establish that an anxiety-related disorder resulted in "complete inability to function independently outside the area of one's home."  See 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.06(B).  As discussed, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff *was* able to function outside his home and did not met the requirements of paragraph C.

3.     Listing 12.08

Plaintiff argues that the ALJ erred by not finding that his mental impairments met Listing 12.08 for "[p]ersonality [d]isorders."  In order to meet Listing 12.08, a plaintiff must meet the requirements in both paragraphs A and B.

Again, Plaintiff does not specifically state how he met the criteria of either paragraph A or B of Listing 12.08, but instead, provides the definition of personality disorders and discuses his activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation.  (#9 at pp. 9-18)

Like paragraph B for Listing 12.04 and 12.06, paragraph B of Listing 12.08 requires that a plaintiff's disorder result in at least two of the following: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration."  See 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.08(B).  As discussed, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff did not meet the criteria set out in paragraph B of 12.08.

Having concluded the Plaintiff did not meet the criteria set out in paragraph B of Listing 12.08, there is no need to discuss the criteria in paragraph A.  Plaintiff has not met his burden of demonstrating, with medical evidence, that he had an impairment that met a Listing.

C.     *Plaintiff's Residual Functional Capacity*

Plaintiff claims the ALJ erred by not properly considering his non-exertional impairments when concluding he had the residual functional capacity ("RFC") to perform a narrowed range of medium work.[3]  (#12 at p. 9)   Substantial evidence in the record, however, supports the ALJ's RFC conclusion.

"The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence." *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004); see also 20 C.F.R. § 404.1545(a) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."). "While the ALJ must consider all of the relevant evidence in determining a claimant's RFC, the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 696-697 (8th Cir. 2007) (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Non-exertional limitations are those that affect a claimant's "ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing, or pulling." 20 C.F.R. § 404 .1569a(a).

---

[3]"Medium work" is defined as work involving the "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

The evidence in the record indicates that, in spite of his non-exertional impairments, Plaintiff was able to maintain his job as a millwright while on medication for depression and PTSD. (Tr. 232, 478-79) Plaintiff admits that he quit working in 2004 because the Veteran's Administration approved him for disability benefits, not because of his non-exertional impairments. (Tr. 22, 232, 476-77)

Plaintiff claims he cannot get along with people, but reported to Dr. Spellman in April, 2005, that he had recently been able to reconcile with his ex-wife. (Tr. 234) Plaintiff was living with his ex-wife at the time of the hearing. (Tr. 482) Dr. Spellman found that Plaintiff's communication was good in all areas; his concentration was adequate; his persistence was variable; and his pace was satisfactory. (Tr. 234) Dr. Spellman concluded that Plaintiff was "capable of functioning satisfactorily in at least some situations. His day-to-day adaptive functioning does not seem significantly impaired as measured by his ability to hold jobs without being fired." (Tr. 234)

The ALJ's RFC analysis is also supported by the opinions of the State agency psychologists who reviewed Plaintiff's medical records and found that his mental functioning did not preclude him from performing all types of work activity. (Tr. 257) The psychologists concluded that Plaintiff was capable of work where "interpersonal contact is routine but superficial, *e.g.*, grocery checker. Tasks are learned by experience, several variables, uses judgment within limits; and the supervision required is little for routine tasks but detailed for non-routine tasks." (Tr. 261)

12

Plaintiff also claims the ALJ "completely omitted Plaintiff's inability to get along with his co-workers from his hypothetical as well as other mental limitations." (#9 at p. 17) In the hypothetical proposed to the vocational expert, the ALJ stated:

> [B]ecause of some mental limitations and effects of certain medications that the individual is prescribed, [he] is limited to work where interpersonal contact is only routine, but superficial.  The performed task can be no more complex than those learned by experience with several variables and the use of judgement within limits.  Little supervision would be required for routine tasks, but detailed supervision would be required for non-routine tasks.

(Tr. 491-92).  The hypothetical posed to the VE accounted for Plaintiff's alleged mental impairments by limiting his RFC to work accommodating his mental limitations; where interpersonal contact is routine, performed task are no more complex than those learned by experience, and detailed supervision is required for non-routine tasks.  See *Howe v. Astrue*, 499 F.3d 835, 841 (8th Cir. 2007) (a hypothetical need only include impairments that are supported by the record and that the ALJ accepts as valid).

As noted by the ALJ, the VE testified that the hypothetical individual could not perform Plaintiff's past work as a millwright because his prior job was rated as skilled and heavy.  (Tr. 490)  The VE went on to testify, however, that there were jobs in the national economy that this hypothetical individual would be able to perform, including machine and hand packager and building cleaner.  (Tr. 492-93)  The VE also testified that a person with Plaintiff's work experience would have transferable skills to medium or light work as a machine operator, and these jobs were available in the local and national

economy.  (Tr. 493-94)  Accordingly, there is substantial evidence to support the ALJ's RFC analysis.

D.      *Plaintiff's Credibility*

Finally, Plaintiff claims the ALJ did not properly assess his credibility.  (#9 at pp. 19-20)  Plaintiff does not point to any evidence in the record to support his assertion.  See *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting "out of hand" plaintiff's conclusory assertion that the ALJ failed to consider whether he met listings because plaintiff provided no analysis of the relevant law or facts regarding the listings). See also, *Rotskoff v. Cooley*, 438 F.3d 852, 854-55 (8th Cir. 2006) (issue deemed abandoned when not developed in brief).

Here, the ALJ made express credibility findings and gave reasons for discrediting the Plaintiff's testimony.  See *e.g. Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). The ALJ properly assessed Plaintiff's subjective complaints in light of the factors set out in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).  (Tr. 20-21)  He considered Plaintiff's work history, observations of third parties, the opinions of state agency medical consultants, and Plaintiff's treating and examining physicians, and there is substantial support for his conclusion that Plaintiff's subjective complaints of pain are not fully credible.  (Tr. 21)

The ALJ considered Plaintiff's work record and noted that Plaintiff had quit working because the VA had awarded him disability benefits.  As set forth above, the

14

ALJ considered Plaintiff's activities of daily living and appropriately concluded that Plaintiff engaged in significant activity in his daily life.  See *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010)("acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking are inconsistent with subjective complaints of disabling pain").  The state agency physicians expressed the opinion that Plaintiff could perform light to medium work.  (Tr. 237-244)

The ALJ considered the medical evidence in the record and stated that Plaintiff appeared to aggrandize his symptomology.  At the hearing, Plaintiff testified that the surgery he had on his left shoulder did not correct the problem with his rotator cuff.  (Tr. 479)  In June, 2005, after shoulder surgery, however, Plaintiff stated he was feeling better and was able to "sleep pain free."  (Tr. 179)   During a March, 2005 consultative examination, Plaintiff complained of tenderness and limited range of motion in his left shoulder, but the consultant noted that Plaintiff did not have any muscle atrophy.  (Tr. 228-29)   During a consultation with a dietitian on May 20, 2006, Plaintiff reported that he lifted weights three times a week and stayed active doing yard work.  (Tr. 335)  In May, 2007, Plaintiff was seen by Aliya Ahmed, M.D., complaining of pain in his right shoulder.  (Tr. 356)  At that time, Plaintiff reported the left shoulder was "doing fine." (Tr. 355)

During his hearing, Plaintiff testified that he had a torn rotator cuff in his right shoulder.   The note from Dr. Ahmed's examination of Plaintiff indicates, however, that

Plaintiff had tenderness of abduction and exterior rotation, but his "motor and sensory are intact." (Tr. 357)  Dr. Ahmed concluded Plaintiff had a "sprain or strain" in his right rotator cuff and prescribed acetaminophen. (Tr. 356)  Dr. Ahmed advised Plaintiff to follow-up if pain did not improve. (Tr. 358)

The ALJ noted that Plaintiff had not been compliant with the recommendations of his physicians or with taking medications. (Tr. 22)  The ALJ noted, for example, that Plaintiff continued to consume alcohol in spite of being warned that it would exacerbate both PTSD and depression. (Tr. 22, 147, 157, 177, 481-82)  Plaintiff cancelled or did not attend scheduled medical appointments and stopped taking medications. (Tr. 155, 178, 215-16, 332, 342, 363)  Dr. Spellman noted in his April, 2005, report that Plaintiff had no physical limitations.  He stated that Plaintiff "seemed to feel entitled," and he thought Plaintiff was "exaggerating some."

The ALJ is in the best position to gauge the credibility of testimony, and those credibility determinations are entitled to some deference. *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  In this case, the ALJ's conclusion that Plaintiff's testimony was not entirely credible is supported by substantial evidence in the record.

IV.   **Conclusion**:

There is sufficient evidence in the record to support the Commissioner's determination that Plaintiff Larry Cease was not disabled during the relevant time period.

Accordingly, Plaintiff's appeal is DENIED.  The Clerk is directed to close the case this

8th day of December, 2010.

_____
UNITED STATES MAGISTRATE JUDGE